```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

DAVID KUTRIP,                          )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )    No. 4:05-CV-358 CEJ
                                       )
CITY OF ST. LOUIS, et al.,             )
                                       )
          Defendants.                  )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' second motion to strike the plaintiff's expert witness, Thomas Adams, D.O. Plaintiff has responded, and the issues are fully briefed.

Defendants claim that the opinions offered by Dr. Adams are not admissible under Rule 702, Fed.R.Civ.P., because Dr. Adams is not qualified to offer opinions relating to the cause of plaintiff's injuries or the appropriate standard of care under the Americans with Disabilities Act.[1]

### I. Dr. Adams' Report and Testimony

Dr. Adams testified that he was retained to conduct a "merit review" of this case, *i.e.*, he "was paid to review a large amount of records and come up with an opinion whether there was any merit to [plaintiff's] bringing a lawsuit." Adams Dep., p. 14. He testified

---

[1] Defendants also contend that plaintiff did not timely disclose the existence and opinions of Dr. Adams, as required by Rule 26(b), Fed.R.Civ.P. This issue was raised in the defendants' earlier motion to strike Dr. Adams' report and to sanction plaintiff for the untimely disclosure. The motion to strike was denied, and new deadlines for expert discovery were established. The Court will not re-visit the issue here.

that he is not acting as a medical expert in this case. Instead, consistent with his handling of other cases, he would have referred this case to an ear, nose and throat specialist or to someone having an expertise in neurology or neurosurgery. Id. at p. 7.

Dr. Adams confirmed the statements and opinions he expressed in his written report. With respect to cause of the injury plaintiff claims he sustained, the report states as follows:

> **Causation:**
> **Delayed evaluation of head injury leaves open the question of whether timely intervention by a physician and appropriate testing, i.e., physical examination including otoscopic evaluation, CT head and referral for specialist consultation, would have altered the course of his progressive hearing loss after the fall.**

When questioned about his report, Dr. Adams gave the following testimony:

> **Q: Dr. Adams, your report does not include a diagnosis of Mr. Kutrip's condition; is that true?**
> **A: Well, do you see one there?**
> **Q. No.**
> **A. No.**
> **Q. So you do not - - you are not able to offer a diagnosis about Mr. Kutrip's condition; is that correct?**
> **A. I didn't make a diagnosis, no. I didn't examine the patient. I examined the records.**
> **Q. All right. Have you seen a medical record or diagnostic testing indicate what is wrong with Mr. Kutrip or why he sustained hearing loss?**
> **A. No.**
> 　　　　　　　　　　**\*\*\*\*\***

> Q. All right. You would be guessing or speculating as to what cause his hearing loss; is that true?
>
> A. As I said, I did not make a diagnosis. What I was rendering an opinion about was the fact that the diagnosis was delayed for a month.
>
> Q. And what diagnosis are you referring to?
>
> A. I don't know.
>
> Q. All right.
>
> A. Because it wasn't made.
>
> *****
>
> Q. And it is fair to say that your report does not offer an opinion about what caused the hearing loss?
>
> A. Absolutely does not because I am not an ENT specialist.
>
> Q. You would have to refer to a qualified ENT to understand or determine within a reasonable degree of medical certainty the medical causation of Mr. Kutrip's hearing loss; is that correct?
>
> A. That's correct.

Adams Dep., pp. 24-25.

When asked whether he could say "within a reasonable degree of medical certainty that any delay cause or resulted in an injury" to plaintiff, Dr. Adams refused to answer and stated that he would refuse to answer any questions about medical causation. Adams Dep., pp. 33-34.

In his report, Dr. Adams wrote, "No ADA required accommodations pertaining to mobility, showering, etc., were made for Mr. Kutrip's disability." He concluded that the "[l]ack of crutches and leg brace contributed to slip and fall accident." In his deposition, Dr. Adams testified that he had never been retained to render an expert

3

opinion with respect to the Americans with Disabilities Act (ADA). Dr. Adams testified that he had read the ADA statute and regulations, but he had no specialized knowledge about the ADA. According to Dr. Adams, the defendants should have provided grab bars or other equipment to aid plaintiff in using the shower. Adams Dep., pp. 37, 39-40.

## II. Discussion

Plaintiff claims that he struck his head when he fell in the shower at the St. Louis Medium Security Institution where he was incarcerated. Plaintiff, who had a leg impairment when he came to the institution, was not allowed to use his crutches and leg brace. He alleges that the shower was not equipped with handrails or other devices needed to accommodate his disability. Plaintiff further alleges that he was not allowed to see a doctor until a month after his injury and, as a result, he lost his hearing.

Rule 702, Fed.R.Evid., provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As his deposition reflects, Dr. Adams cannot render an opinion within a reasonable degree of medical certainty as to the cause of plaintiff's hearing loss or as to whether any delay in treatment caused or contributed to cause the injury. Indeed, in his report Dr. Adams is equivocal on the effect of any delay in treatment, stating only that it is an open question whether earlier evaluation would

4

have made any difference.  Further, he testified that he lacked the expertise of an ENT specialist who would have to be consulted to give an opinion about the cause of plaintiff's hearing loss.

Dr. Adams also cannot provide an expert opinion as to the requirements of the ADA.  Neither in his report nor in his testimony does Dr. Adams refer to any provision of the ADA or its regulations regarding accessibility standards for penal institutions and whether the those standards were violated by withholding plaintiff's crutches and leg brace or by the condition of the shower in which plaintiff fell.

Given the limitations of Dr. Adams' expertise and the insufficient basis for the opinions given in his report and deposition, the Court finds that Dr. Adams can provide no evidence that would aid the jury in its consideration of plaintiff's claims. The Court concludes that the Dr. Adams' testimony would not be admissible under Rule 702, Fed.R.Civ.P.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' second motion to strike plaintiff's expert witness [# 114] is granted.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of November, 2007.