```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

DAVID KUTRIP,                  )
                               )
            Plaintiff,         )
                               )
      vs.                      )     No. 4:05-CV-358 CEJ
                               )
CITY OF ST. LOUIS, et al.,     )
                               )
            Defendants.        )

### MEMORANDUM AND ORDER

Plaintiff David Kutrip brings this action pursuant to 42 U.S.C. § 1983; the Americans With Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*; and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*[1] Additionally, plaintiff asserts pendent state law claims of negligence and medical malpractice. The defendants are the City of St. Louis (City); Eugene Stubblefield, Superintendent of the City of St. Louis Division of Corrections (Stubblefield); and Correctional Medical Services (CMS). The defendants move for summary judgment. Plaintiff has responded, and the issues are fully briefed.

**I.   Background**

---

[1] Plaintiff cites Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as the basis of his claim in Count I of the Second Amended Complaint. However, he does not assert a claim of employment discrimination. Rather, it is evident from the allegations of Count I that plaintiff is asserting an Eighth Amendment claim of deliberate indifference to his serious medical needs. The Court will thus construe Count I as a claim brought under 42 U.S.C. § 1983.

In 1999, plaintiff suffered an injury to his left leg that impaired his ability to walk unassisted. As a result, he was required to use a leg brace and metal crutches.

After being convicted of stealing, plaintiff was incarcerated in the St. Louis Medium Security Institution (MSI) from February 26 to May 13, 2003. Upon admission to MSI, plaintiff was examined by CMS medical personnel. The report of the examination contains plaintiff's medical history and mental health status, and describes the condition of his leg and his use of crutches and the leg brace. According to the report, plaintiff had "restricted mobility." The "Disposition" section of the report contains what appears to be a recommended referral to a physician. Under the "Placement" heading, the space marked "Other" is marked.[2]  is a not Plaintiff's crutches and brace were taken away by MSI personnel due to concern that they could be used as weapons by or against plaintiff. Plaintiff was allowed to use the crutches and the brace when he had visitors.

At approximately 9:00 a.m. on March 7, 2003, plaintiff slipped and fell in the shower, striking his head and temporarily losing consciousness. He reported the incident to Pauline Watts, an MSI corrections officer. Plaintiff testified that he was bleeding from an area behind his left ear. He testified that he immediately had pain and ringing in his left ear, and that ringing later developed

---

[2]The additional choices under the "Placement" heading were "Infirmary," "Detoxification Setting," and "Gen Population."

in his right ear. Plaintiff presently has no hearing in the right ear and diminished hearing in the left.

Plaintiff was seen by Nurse Rosalind Parrett, a CMS employee, at 2:00 p.m. on March 7, 2003. According to the notes of the examination, plaintiff told Nurse Parrett that he had fallen in the shower. Plaintiff's left hip was noted to be tender, but without bruising. The notes state that plaintiff was "to be brought to medical," and that Parrett found plaintiff to be "in no acute distress." Nurse Parrett testified that if plaintiff had complained of ringing in his ears, hearing loss, dizziness, or loss of balance on March 7, 2003, it would have been documented in his medical record and she would have conveyed the complaints to the doctor.

At 3:20 p.m. on March 7, Santiago Hallazgo, M.D., a physician employed by CMS, approved a 7-day prescription for Tylenol for plaintiff. A chart tracking the administration of medication to plaintiff shows that he was given Tylenol twice a day from March 8 to March 14, 2003. Plaintiff received an x-ray of his left ankle on March 10, 2003, as ordered by Dr. Hallazgo.

Plaintiff testified that he submitted at least five Medical Services Request (MSR) forms, seeking treatment for his injury. Although plaintiff testified that his attorney has copies of the MSRs, only one such document has been produced. In the MSR dated March 23, 2003, plaintiff wrote that he had fallen in the shower three weeks earlier and that he had lost all hearing in his left ear. Plaintiff also wrote that he couldn't focus, that his left

eye "waters a lot," and that he had "extreme pain" in his leg. He noted in the MSR that he had made "multiple" requests for treatment since the incident.

Plaintiff was examined by Dr. Hallazgo on April 8, 2003. Dr. Hallazgo diagnosed a contusion on the left side of plaintiff's head which was "already resolved."[3] Upon examination of plaintiff's left ear, the tympanic membrane was found to be intact, with no evidence of blood or hematoma. Dr. Hallazgo ordered a skull x-ray because plaintiff claimed to have hit his head. Dr. Hallazgo testified that he did not check plaintiff's ability to hear from his left ear because plaintiff was answering Dr. Hallazgo's questions during the exam and apparently could hear.

The skull x-ray was performed on April 11, 2003, and revealed no evidence of a skull fracture. The x-ray results indicated, "Clinical History: Trauma," and "Normal bony calvarium without fracture. Normal pituitary fossa. Impression: Normal Study."

Dr. Hallazgo examined plaintiff again on April 22, 2003. On that day, plaintiff complained of "muffle sounds in his left ear." Dr. Hallazgo did not perform a hearing test, and he testified that he did not know whether the contusion he diagnosed earlier was causing plaintiff's hearing problems. Dr. Hallazgo did not refer plaintiff to an ear, nose and throat specialist; he prescribed a

---

[3] "Resolve" has a specialized meaning in the medical context as follows: "To return to normal as after a pathological process." Taber's Cyclopedic Medical Dict., Clayton L. Thomas, M.D., M.P.H., ed. (14th ed., F.A. Davis Co., 1977) (1940), 1237.

decongestant, reasoning that plaintiff's muffled hearing might have been caused by a clogged eustachian tube.

Since being released from custody, plaintiff has sought medical evaluation and treatment of his hearing impairment. However, by the time plaintiff appeared for his deposition on August 29, 2006, no doctor had given him a diagnosis of the cause of his hearing loss.

In an affidavit, plaintiff's father, Gerry Kutrip, states that he visited plaintiff at MSI after he fell in the shower. Mr. Kutrip states that plaintiff's face and ear were visibly swollen; plaintiff had difficulty walking, complained of severe pain, and hearing loss in his left ear and ringing in his right ear. Plaintiff's sister and sister-in-law have also submitted affidavits, stating that they saw swelling on the left side of plaintiff's face and ear and observed that he had difficulty walking. In their affidavits, plaintiff's father and sister state that they "spoke with the warden's office at MSI" and reported plaintiff's condition and his need for medical care. They do not state whether they spoke to defendant Stubblefield.

During his incarceration, plaintiff was assigned to HU3, a housing unit for inmates who, because of physical or mental impairments or for other safety reasons, could not reside in the general population. One of the cells in HU3 was wheelchair-accessible. Plaintiff was not assigned to this cell. Of the four shower stalls in HU3, one was equipped with handrails. Plaintiff testified that he did not know about the handrail-equipped stall;

5

he did not recall whether the stall he slipped in had a handrail. Additionally, plastic chairs were available for inmates to take into the shower stalls. Plaintiff did not ask for a shower chair and he did not ask to use the disabled-access stall. Plaintiff testified that he was allowed to shower for only ten minutes at a time. During the three months he was incarcerated, plaintiff states that he took only two showers because he "couldn't do it in ten minutes and it was just too hard to take a shower." When asked whether he ever asked for assistance in showering, plaintiff stated that he only asked for more time.[4]

Defendant CMS contracts with the City of St. Louis to provide medical services to inmates at MSI. CMS does not have any responsibility for the maintenance or repair of the MSI facility, nor does CMS have any ownership interest in the facility. CMS does not have authority to direct the housing assignment of MSI inmates, but it can make housing recommendations based on an inmate's medical needs.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[4]In an affidavit, Dwayne Darden, an MSI corrections officer assigned to HU3, states that "[o]n a number of occasions, [he] placed a plastic chair in the shower stall with Plaintiff so that he could steady himself." This statement is at odds with plaintiff's testimony that he took only two showers.

6

to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**III. Discussion**

**A. Section 1983 Claim Against Defendants City and Stubblefield**

In Count I, plaintiff claims that defendants City and Stubblefield were deliberately indifferent to his serious medical

needs.[5] He alleges that these defendants knew of his medical condition, but they failed to respond to his requests for treatment.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). Here, plaintiff has presented no evidence that defendant Stubblefield was aware of his medical condition. Plaintiff's evidence is that he reported his injuries to an MSI corrections officer and to CMS employees, not to Stubblefield. There is no evidence that Stubblefield ever saw plaintiff after he was injured or that plaintiff's condition was ever reported to him, either by plaintiff's relatives or by MSI staff. Even if plaintiff were able to prove that actions or inaction of MSI employees resulted in the claimed constitutional deprivation, that would not be sufficient to hold Stubblefield liable. The knowledge and conduct of MSI employees with respect to plaintiff's medical needs cannot be imputed to Stubblefield. A defendant in a § 1983 action cannot be held liable for constitutional violations under the theory of *respondeat superior.* Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001).

The Court turns now to plaintiff's deliberate indifference claim against defendant City. A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a theory of *respondeat superior*. Monell v. Dep't of Soc.

---

[5]Plaintiff voluntarily dismissed his deliberate indifference claim against defendant CMS.

Servs. of the City of New York, 436 U.S. 658, 694 (1978). However, a municipality may be liable for the unconstitutional acts of its employees when those acts implement or execute an unconstitutional policy or custom. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). To establish municipal liability, a plaintiff must prove that a municipal policy or custom was the moving force behind the constitutional violation. Id. If the plaintiff cannot point to a policy, he must establish the existence of a custom. Id. To do so, the plaintiff must establish: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by employees; (2) deliberate indifference to or a tacit authorization of such conduct by policymaking officials after notice of that misconduct; and (3) injury by acts pursuant to the custom, i.e. proof that the custom was the moving force. Ware v. Jackson, 150 F.3d 873, 880 (8th Cir. 1998).

Here, there is no evidence that the claimed constitutional violation resulted from a policy or custom of the City of St. Louis. Indeed, plaintiff does not even allege as much in the second amended complaint. Thus, the City cannot be held liable under § 1983.

**B.  ADA and Rehabilitation Act Claims Against All Defendants**

Plaintiff alleges that defendants failed to reasonably accommodate his disability, a violation of the Americans with Disabilities Act (ADA) (Count II) and the Rehabilitation Act (RA) (Count III).

Title II of the ADA prohibits disability discrimination in the provision of public services. See 42 U.S.C. § 12131, et seq. The relevant statute provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A "department, agency . . . or other instrumentality" of local government, including a local corrections department, is a "public entity" within the meaning of the ADA. Gorman v. Bartach, 152 F.3d 907, 912-13 (8th Cir. 1998); 42 U.S.C. § 12131(1).

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., provides in part:

> No otherwise qualified individual with a disability . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Program or activity is broadly defined to include "all of the operations of" an "instrumentality" of a local government. 29 U.S.C. § 794(b)(1).

To establish a prima facie claim under Title II of the ADA, a plaintiff must show: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability. Randolph v. Rogers, 170 F.3d 850, 858 (8th Cir. 1999). To establish a prima facie case of discrimination under the Rehabilitation Act contains, plaintiff must satisfy the additional requirement of showing that the program or activity from which he is excluded receives federal financial

assistance. Id.[6] Cases interpreting the ADA and the Rehabilitation Act are "applicable and interchangeable." Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (citation omitted).

### 1. Defendants City and Stubblefield

Defendants City and Stubblefield concede for the purposes of the instant motions that plaintiff is disabled within the meaning of the ADA and the Rehabilitation Act.

Plaintiff alleges he was excluded from participation in and/or denied the benefits of prison services (a) when he was not provided with a disabled-accessible cell, (b) when he was not informed that a disabled-accessible shower was available, (c) when he was given only 10-15 minutes in which to take a shower, (d) when his crutches and foot brace were taken from him upon admission to MSI, and (e) when he was placed in "solitary confinement." Defendants City and Stubblefield respond that plaintiff failed to take advantage of accommodations that were offered to him, including a disabled-accessible shower stall and a plastic shower chair, and that plaintiff neither requested nor was he denied any reasonable accommodations that were available to him.

While the ADA and RA "do not require public entities to 'guess' an individual's need for an accommodation," when an individual's disability and needs are "obvious" or the public entity has notice of them, the individual need not specifically

---

[6]Plaintiff does not allege in the second amended complaint that the City of St. Louis is the recipient of federal financial assistance.

11

request an accommodation to trigger the entity's duty to provide one. McCoy v. Texas Dept. of Criminal Justice, 2006 WL 2331055 at *7 (S.D. Tex. 2006) (slip op.), citing Randolph v. Rogers, 170 F.3d 850, 858 (8th Cir. 1999); and Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 n. 7 (1st Cir. 2001).

Here, plaintiff's disability was obvious to defendants, as that was the reason for the decision to assign him to a housing unit occupied by inmates with physical impairments. The plaintiff's need for assistive walking devices was also obvious. Because defendants were aware of plaintiff's impairment and of his need for accommodation, plaintiff was not required to make a specific request for accommodation.

The type of accommodation sufficient in a prison setting "to satisfy the [ADA's] reasonableness requirement must be judged in light of the overall institutional requirements. . . . Security concerns, safety concerns, and administrative exigencies" are all "important considerations to take into account." Love v. Westville Correctional Center, 103 F.3d 558, 560 (7th Cir. 1996), cf. Turner v. Safley, 482 U.S. 78 (1987). The evidence is undisputed that the decision to place plaintiff in HU3 and to take away his crutches and foot brace was based on safety concerns. The Court finds that this decision was reasonable in light of the legitimate penological concerns of prisoner security and safety.

During his incarceration at MSI, plaintiff was not placed in the wheelchair-accessible cell. The evidence is that plaintiff used crutches and a leg brace; he was not in a wheelchair.

12

Plaintiff neither claims nor produces any evidence a wheelchair-accessible cell was a needed accommodation.

The undisputed evidence is that a disabled-accessible shower stall was available in HU3 during plaintiff's incarceration. Plaintiff asserts that he didn't know about it, but merely by claiming lack of knowledge plaintiff cannot satisfy his burden of showing that no accommodation was provided. There is no evidence that the shower stall equipped with handrails was insufficient to accommodate plaintiff's disability. The plaintiff has offered no evidence that further accommodations (i.e., shower chair or additional shower time) in addition to the disabled-accessible shower stall were necessary to accommodate his disability.

The Court concludes that defendants City and Stubblefield are entitled to judgment as a matter of law on Counts II and III.

**2. Defendant CMS**

The evidence is that defendant CMS was only the provider of medical services for MSI inmates. CMS had no authority in issues regarding the housing assignment of inmates or their use of the shower facilities. CMS had no ownership interest in the MSI facility, and had no authority with respect to the facility's maintenance or repair. Plaintiff argues, however, that CMS is liable because it failed to conduct an Initial Classification Analysis (ICA) that would have identified his medical needs that had to be taken into consideration in determining his classification.

In support of this argument, plaintiff submits a copy of the policy that requires completion of an ICA for offenders in the custody of the *Missouri Department of Corrections*. This policy on its face does not apply to inmates in the custody of MSI. There is no evidence that MSI was bound by the state department of corrections policy or by any policy similar to it. Plaintiff has not shown that the City required CMS to provide an advisory opinion regarding inmate care or housing upon admission to MSI, or that the failure to do so violates the ADA or Rehabilitation Act.

As set forth above, the evidence establishes that CMS medical staff examined the plaintiff on the day of his admission to MSI. The report notes plaintiff's leg injury and his use of assistive walking devices. The report also appears to contain a recommendation that plaintiff's housing assignment be something other than the infirmary, the detoxification unit or the general population. Thus, plaintiff's allegation that CMS failed to assess his physical condition is belied by the evidence.

There is no evidence that CMS had the authority to decide where plaintiff would be housed. At best, CMS could only make recommendations. The Court finds that CMS had no duty to ensure that plaintiff received disabled-accessible accommodations. Because plaintiff has not established that CMS violated the ADA or Rehabilitation Act, the Court will enter summary judgment in favor of CMS on Counts II and III.

**C. State Law Claims**

In the remaining counts, plaintiff asserts state law claims of medical malpractice and negligence. For the reasons discussed above, the Court concludes that the defendants are entitled to judgment as a matter of law on the plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over the plaintiff's negligence and medical malpractice claims. 28 U.S.C. § 1367(c)(3)(3) (court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original jurisdiction).

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motions for summary judgment are **granted as to Counts I, II and III.**

**IT IS FURTHER ORDERED** that Counts IV and V are **dismissed without prejudice.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2007.